OPINION
{¶ 1} On September 15, 1997, Harry Sisco was shot and killed in front of his house on South Broad Street in Lancaster, Fairfield County, Ohio, at approximately 6:45 p.m. Appellant is the stepson of the deceased.
 {¶ 2} This case has a substantial procedural history. On September 25, 1997, the Fairfield County Grand Jury indicted Appellant on one count of aggravated murder with two firearm specifications, in violation of R.C. 2903.01, one count of grand theft of a motor vehicle in violation of R.C. 2913.02, one count of fleeing and eluding, in violation of R.C. 2921.331, and one count of having a weapon while under disability, with a firearm specification, in violation of R.C. 2923.13. State v. Hill
(2000), 136 Ohio App.3d 636.
 {¶ 3} The first jury trial commenced on September 1, 1998. The jury found Appellant guilty as charged except for the grand theft charges where the jury found Appellant guilty of the lesser included offense of unauthorized use of a motor vehicle, in violation of R.C. 2913.03. By judgment entry filed September 24, 1998, the trial court sentenced Appellant on the aggravated murder conviction to life imprisonment with parole eligibility after twenty years, plus eight years mandatory incarceration for the firearm specifications, to be served consecutively. The trial court also sentenced Appellant to terms of seventeen months and eleven months to be served consecutively to the aggravated murder sentence.
 {¶ 4} Appellant filed an appeal and this Court reversed and remanded the case for new trial based upon the use by the trial court of an anonymous jury. See State v. Hill (2000),136 Ohio App.3d 636. (hereinafter cited as Hill 1). The State appealed our decision and the Supreme Court of Ohio reversed and remanded the case to this Court for complete review of the assignments of error. See State v. Hill (2001), 92 Ohio St.3d 191,2001 Ohio 141, 749 N.E. 2d 274, State v. Hill (January 17, 2002 Fairfield App.) Case No. 98 CA 67, 2002 Ohio 227. (hereinafter cited asHill 2).
 {¶ 5} On remand this Court reversed Appellant's conviction and remanded the case for a new trial in Hill 2. During Appellant's second jury trial, Appellant was convicted of aggravated murder with both firearm specifications, unauthorized use of a motor vehicle as a first degree misdemeanor, fleeing and eluding, and having weapons under disability. (Judgment Entry of Sentence filed August 12, 2003). Appellant timely filed a notice of appeal, however, his initial counsel failed to file a merit brief. On July 5, 2005, this Court granted Appellant application to reopen his appeal. (Entry filed July 5, 2005).
 {¶ 6} The facts involved in this case have been addressed by this Court on two previous occasions in Hill 1 and Hill 2.
Because Appellant's assignments of error do not involve the facts of the crime, the Court will discuss the facts of the crime only insofar as they relate to appellants' assignments of error.
 STATEMENT OF THE FACTS {¶ 7} Prior to the second jury trial after the remand from this Court that occurred in Hill 2, Appellant's new trial counsel filed a motion to suppress on February 13, 2003. That motion was heard by the trial court on July 3, 2003. (Transcript of Hearing on Motion to Suppress, July 3, 2003 [Hereinafter referred to as "MT.]). At this hearing, the parties stipulated to Detective David Bailey's former testimony; that the replaying of the tape of Appellant's statement was not necessary; and the fact that Appellant waived his rights. (MT. 3).
 {¶ 8} At approximately 9:40 p.m., appellant was interviewed by Detective Sergeant Dave Bailey of the Lancaster Police Department at the headquarters of the Lancaster Police Department. (Second Jury Trial, 8T., July 14, 2003 at 1362 [Hereinafter referred to as "JT]). Appellant executed a written waiver of his Miranda rights. (Id. at 1362).
 {¶ 9} During the interview, Appellant denied killing Harry Sisco. (Id. at 1371). However, prior to invoking his Fifth Amendment right to remain silent, Appellant, according to Detective Bailey, made six statements during a pre-interview that Detective Bailey thought were significant and relevant to Appellant's guilt. (Id. at 1366). The pre-interview took place immediately before appellant made a tape recorded statement to Detective Bailey. The statements made by appellant during the tape-recorded interview were held to be inadmissible as taken in violation of appellant's request to stop the questioning. (SeeHill 2). Accordingly the only statements at issue in the instant appeal are the statements appellant made to Detective Bailey during the pre-interview.
 {¶ 10} First, Appellant allegedly stated to Detective Bailey that he did not ride in or borrow his girlfriend's car on September 15, 1997, the date of the shooting. (Id. at 1366) This was later refuted by other witnesses, including his girlfriend.
 {¶ 11} Second, Appellant allegedly stated he had not heard of the death of Harry Sisco until advised by Detective Bailey. (Id. at 1367).
 {¶ 12} Third, Appellant allegedly stated he did not know why he had run from law enforcement on a motorcycle. (Id. at 1367).
 {¶ 13} Fourth, Appellant allegedly stated he barely knew his girlfriend, did not have her address, and did not know how to get hold of her. (Id. at 1367).
 {¶ 14} Fifth, Appellant allegedly stated he was not driving his welding truck on September 15, 1997, and did not know how he got around town on September 15, 1997. (Id. at 1367).
 {¶ 15} Sixth, Appellant allegedly stated he did not know for certain where he was or what he was doing between 6:00 p.m. and 7:00 p.m. on September 15, 1997, the time the shooting took place. (Id. at 1367).
 {¶ 16} At 1:40 a.m., approximately four hours after appellant was interviewed Appellant's blood alcohol level tested at .14 BAC. Based on Detective Bailey's experience and training, Appellant's blood alcohol level at the time of his interview with Detective Bailey would have been approximately .20 BAC.
 {¶ 17} At the motion to suppress hearing that occurred before the second trial Detective Bailey testified that Appellant never requested an attorney, and was not mistreated. (MT. at 5). During his interview with Appellant, Appellant acknowledged that he understood his rights. (Id. at 12). Detective Bailey stated that even though Appellant had drank too much, Appellant still understood his rights and was capable of deciding whether he wished to talk to Detective Bailey. (Id. at 16). Detective Bailey stated that Appellant was able to speak clearly, was not struggling with his questions, and the Constitutional rights are not complex matters that would cause someone to struggle with after drinking. (Id. at 16-17). The parties also stipulated that the trial court could review the transcript of Appellant's statement that was used as evidence during the first trial that began at page 1756 of the first jury trial transcript. (Id. at 21).
 {¶ 18} At the time of his apprehension by law enforcement prior to his interview, Appellant testified he was thrown to the ground, a gun was shoved in his mouth, and he was verbally threatened by law enforcement officers. (MT. at 24-25). Thereafter, Appellant was handcuffed and taken to the Lancaster Police Department. (Id. at 26). At the time he was interviewed, Appellant acknowledged he was drunk and confused. (Id. at 42).
 {¶ 19} Appellant testified at the motion to suppress hearing that occurred before the second trial and stated that he drank in spurts, had been drinking off and on all day, but can drink a lot. (Id. at. 22-23). According to Appellant, Detective Bailey slid the Miranda waiver across the table to Appellant and said, "See that." (Id. at 30). According to Appellant, Detective Bailey asked if he could read his Miranda rights and Appellant said, "Yeah I think so." (Id. at 30). Appellant claimed that he could barely read his rights. (Id. at 31). Appellant claimed to remember that during the pre-interview discussion he and Detective Bailey were talking about the motorcycle, how much Appellant had eaten and drank, how much money Appellant made, and who he worked for. (Id. at 32). On cross-examination Appellant did acknowledge that he was half an hour to forty-five minutes alone with Detective Bailey. (MT. at 36). Appellant also acknowledged that during the tape recorded statement Appellant admitted that he had had an opportunity to review his Miranda rights. (Id. at 40). Appellant also, during his taped statement, stated that he understood his rights. (Id. at 40-41). Appellant acknowledged that he knew his rights and had been arrested at least five times, but not as many as ten. (Id. at 41). The concluding question on cross-examination was, "My question, Sir, is, were you able to understand your rights?" Did the alcohol that you took prevent you from understanding your basic rights?" Appellant's response was, "I guess I would have understood them." (Id. at 43-44). The trial court's ruling on Appellant's motion to suppress was as follows:
 {¶ 20} "With regard to the Appellant's motion to suppress, the Court grants the motion in part as it relates to the State's case-in-chief with regard to all comments occurring on the taped recorded statement. It is hereby ordered that the statements made by the Appellant prior to the tape recording are admissible and the statements during the tape recording are inadmissible during the State's case-in-chief". (Judgment Entry, filed July 10, 2003 at p. 2).
 {¶ 21} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 {¶ 22} "I. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE DEFENDANT'S STATEMENTS TO LAW ENFORCEMENT.
 {¶ 23} "II. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT."
 I. {¶ 24} Appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 25} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 485; Statev. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,620 N.E.2d 906; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657,1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed denovo on appeal."
 {¶ 26} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility.State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726. (citations omitted). In Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citingState v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 27} Whenever the State bears the burden of proof in a motion to suppress a statement allegedly obtained in violation of the Miranda doctrine, the State need prove waiver only by a preponderance of the evidence. Lego v. Twomey (1972),404 U.S. 477, 92 S.Ct. 619; Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515. The question of voluntariness necessarily turns on the totality of circumstances. Boulden v. Holman (1969),394 U.S. 478, 480, 89 S.Ct. 1138, 1139.
 {¶ 28} In the case at bar appellant contends that a combination of factors renders his pre-interview statement involuntary, to wit: the insertion of a gun into appellant's mouth during his initial apprehension; the failure of Detective Bailey to orally inform appellant of his Miranda rights and the appellant's level of intoxication. (Appellant's Brief, filed November 23, 2005 at 7).
 {¶ 29} Appellant was arrested at 8:15 p.m. (First Jury Trial, 6T., Sept. 11, 1998 at 1114[Hereinafter referred to as "ST"]; 8JT. at 1418). Patrolman Devereaux testified that upon seeing the appellant walking, he approached appellant, asked him his name and asked appellant to keep his hands in plain view. (6ST. at 1115-1116; 7JT. at 1242-43). He then requested identification from the appellant, and performed a pat-down search of his person. (Id.). Patrolman Devereaux testified that appellant was very compliant. (Id.). Patrolman Carl Tatman testified that as he arrived on the scene, Patrolman Devereaux and his partner were patting appellant down alongside their police cruiser. (6ST. at 1029-30; 7JT. at 1148-49). Patrolman Tatman transported appellant to the police station. (Id.).
 {¶ 30} At the hearing on the first Motion to Suppress, appellant admitted that he never told Detective Bailey that anyone had stuck a gun in his mouth. (10ST. at 1728). Appellant never told anyone on the night in question that he had been threatened. (Id. at 1729). In fact appellant's account of his arrest given during his 1997 tape recorded statement with Detective Bailey mirrors the testimony of the arresting officers. (Id. at 1760-61).
 {¶ 31} Although the appellant testified that the officers threw him to the ground and stuck a gun into his mouth while arresting him the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. (10ST. at 1712; MT. at 24-25). See, Statev. Guysinger, supra. "While the [trier of fact] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence".State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA091-236. Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096.
 {¶ 32} In Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515, 93 L.Ed.2d 473, the court held that "police over-reaching" is a prerequisite to a finding of involuntariness. Evidence of use by the interrogators of an inherently coercive tactic (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis. State v. Clark (1988),38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854.
 {¶ 33} In the cause sub judice, the appellant does not assert that he was physically deprived or mistreated while at the police department, nor does the record reveal any type of physical deprivation or mistreatment. Moreover, there is no evidence that police subjected appellant to threats or physical abuse, or deprived him of food, sleep, or medical treatment. SeeState v. Cooey (1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895,908. The activities surrounding appellant's arrest took place over one and one-half hours before the pre-interview statements.
 {¶ 34} The record is insufficient to establish that appellant's "will was overborne" by the officers' activities in placing him under arrest thereby rending his wavier of Miranda rights involuntary.
 {¶ 35} Appellant next contends that the failure of the officers to orally inform him of his Constitutional rights renders his pre-interview statements involuntary.
 {¶ 36} In State v. Dailey (1990), 53 Ohio St.3d 88,559 N.E.2d 459, the Ohio Supreme Court outlined the manner in which a suspect must be informed of his or her Miranda rights: "[i]nMiranda, supra, the court indicated that `the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' Id. at 444,86 S.Ct. at 1612. The court indicated that in the absence of othereffective measures the following procedures to safeguard the Fifth Amendment privilege must be observed:
 {¶ 37} `Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'Id.
 {¶ 38} "The United States Supreme Court has often indicated that there is no rigid rule requiring that the content of theMiranda warnings given to an accused prior to police interrogations be a virtual incantation of the precise language contained in the Miranda opinion. See California v. Prysock
(1981), 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696; Duckworthv. Eagan (1989), 492 U.S. 195, 109 S.Ct. 2875, 2879,106 L.Ed.2d 166, 176-177. The warnings required by Miranda are necessary in the absence of any other effective equivalent.Miranda, supra, 384 U.S. at 476, 86 S.Ct. at 1629; Prysock,
supra, 453 U.S. at 359-360, 101 S.Ct. at 2809; Duckworth,
supra, 492 U.S. at ___, 106 L.Ed.2d at 176-177,109 S.Ct. at 2879. They are simply required to convey to a suspect his rights and are not themselves rights protected by the Constitution.Duckworth, supra, at ___, 109 S.Ct. at 2880,106 L.Ed.2d at 177. They are measures to insure that the right against compulsory self-incrimination is protected. Id. Hence, a reviewing court need not examine the warnings as if construing a will or defining the terms of an easement. Id.
 {¶ 39} "In State v. Edwards (1976), 49 Ohio St.2d 31,37-41, 3 O.O.3d 18, 21-24, 358 N.E.2d 1051, 1057-1059, vacated in part (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 we rejected the defendant's argument that the Miranda warnings given to him were inadequate because the police officer never explicitly asked him whether he wanted an attorney. As indicated in Moran v. Burbine (1986), 475 U.S. 412, 420, 106 S.Ct. 1135,1140, 89 L.Ed.2d 410 the warnings required by Miranda are satisfied where `prior to the initiation of questioning, * * * [the police] must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to `have counsel present * * * if [he] so desires.' In Duckworth, supra,
492 U.S. at ___, 109 S.Ct. at 2880, 106 L.Ed.2d at 177, the court approved, as touching all of the bases required by Miranda,
warnings informing a suspect `that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to speak to an attorney before and during questioning', that he had `this right to the advice and presence of a lawyer even if [he could] not afford to hire one,' and that he had the `right to stop answering at any time until [he] talked to a lawyer.'" Id. at 90-91, 559 N.E.2d at 461-62. (Emphasis in original).
 {¶ 40} The parties in the case at bar do not dispute the fact that appellant signed a written waiver of constitutional rights form prior to the beginning of the pre-interview with Detective Bailey. There is no dispute that the written form correctly and adequately explained appellant's Miranda rights.
 {¶ 41} Evidence of a written waiver form signed by the accused is strong proof that the waiver was valid. State v.Clark (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854; seeNorth Carolina v. Butler (1979), 441 U.S. 369, 374-375,99 S.Ct. 1755, 1758-1759, 60 L.Ed.2d 286, 293; State v. Dennis
(1997), 79 Ohio St.3d 421, 425, 1997-Ohio-372, 683 N.E.2d 1096, 1102. Further, appellant acknowledged at the beginning of the tape recorded interview with Detective Bailey, which occurred immediately after the pre-interview, that he had previously read his rights and that he understood them. (MT. at 30; 40). Appellant admitted during his testimony that he knew his rights on the night in question. (Id. at 41). Additionally, appellant acknowledged that he "knew he had rights" during the 1998 hearing on his first Motion to Suppress. (10T. at 1717). During that hearing appellant admitted that he knows what the Miranda
rights are and that he was aware of those rights at the time the questioning occurred on September 15, 1997. (10ST. at 1716-17).
 {¶ 42} Based upon the above evidence, we conclude the state met its burden in establishing that appellant was advised and aware of his Miranda rights prior to the beginning of his interview with Detective Bailey.
 {¶ 43} Appellant finally contends that he was too intoxicated to have knowingly and intelligently waived his Constitutional rights therefore his pre-interview statement was not voluntary.
 {¶ 44} Evidence of intoxication, without more, does not compel the conclusion that a statement to police was made involuntarily and must be suppressed. State v. Stewart (1991),75 Ohio App.3d 141, 147, 598 N.E.2d 1275; State v. Christopher
(April 27, 1989), Montgomery App. No. 10870. The standard is whether, by reason of intoxication or other factor, defendant's "will was overborne" or whether his statements were the "product of a rational intellect and a free will." Townsend v. Sain
(1963), 372 U.S. 293, 307, 83 S.Ct. 745, 754. In that case, a police physician had given Townsend a drug with truth-serum properties. 372 U.S., at 298-299, 83 S.Ct., at 749-750. The subsequent confession, obtained by officers who knew that Townsend had been given drugs, was held involuntary.
 {¶ 45} Coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. See Moran v. Burbine, 475 U.S., at 421, 106 S.Ct., at 1141
("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. . . . [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements");Fare v. Michael C., 442 U.S. 707, 726-727, 99 S.Ct. 2560,2572-2573, 61 L.Ed.2d 197 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit. . . . The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court inMiranda"). Colorado v. Connelly, supra, at 167, 170,107 S.Ct. 522-23.
 {¶ 46} In Ohio, in order to determine whether an individual has waived his or her rights to remain silent and have the assistance of counsel, we must examine the totality of the circumstances surrounding the waiver. State v. Clark (1988),38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854. This approach requires us to inquire into all the circumstances surrounding the interrogation. This includes the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.State v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus, reversed on other grounds, (1978),438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155.
 {¶ 47} Appellant has been arrested as many as five times, but less than ten times over the years. (MH. at 41). The appellant was arrested at 8:15 p.m. (6ST. at 1114; 8JT. at 1418). The waiver of rights form was signed at 9:40 p.m. (10ST. at 1665; 8JT. at 1362; MH. At 12). The pre-interview lasted approximately 15 minutes. (10ST. at 1675). Detective Bailey's pre-interview with the appellant began at 9:40 p.m. and the tape-recorded interview concluded shortly after 10:00 p.m. (MH. at 16). Appellant acknowledged that no promises or threats were made by the officers. (10ST. at 1732). Appellant's responses to Detective Bailey's pre-interview questions did not directly implicate him in the murder.
 {¶ 48} The record further reveals that after consuming alcohol, but prior to his arrest, appellant, while riding a motorcycle, led the police on a chase reaching speeds in excess of 60 m.p.h. (6ST. at 1021; 7JT. at 1238). Appellant had initially stopped in response to the pursuing officer, however, when told several times to "turn the motorcycle off", appellant told the officer "no", proceeded to remount the motorcycle and sped away. (6ST. at 1019; 1057; 6JT. at 1138-39). After successfully eluding the pursuing police officers, appellant had the cognitive ability to enlist the aid of a neighbor to hide the motorcycle from the view of the patrolling police officers, obtained a change of clothes and hid the shirt that he had been wearing. (6ST. at 1086-1090; 1093-96; 7JT. at 1214-24).
 {¶ 49} Subsequent to his arrest appellant agreed to submit to a gunshot residue test. Appellant does not allege that he was too intoxicated to give his consent to that test. Patrolman Tatman had been involved in the pursuit of appellant and subsequently transported him to jail. (6ST. at 1030-31; 7JT. at 1148-49). Patrolman Tatman testified that appellant did not appear intoxicated, unsteady on his feet, nor was his speech slurred. (6ST. at 1060; 6JT. at 1159). Detective Dan Shupp testified that he performed a gunshot residue test on appellant shortly after 9:30 p.m. on September 15, 1997. (8ST. at 1306; 9JT. at 1546). Detective Shupp testified that appellant understood the questions that were asked of him and reacted reasonably in answering the questions. (9JT. at 1548-49). Appellant did not slur his speech or use inappropriate grammar. (Id.).
 {¶ 50} At no time during his testimony at the 1998 Motion to Suppress hearing did appellant ever indicate that he was intoxicated, or that intoxication prevented him from understanding and waiving his Constitutional rights. (10ST. at 1710-35).
 {¶ 51} Based upon the above evidence, we conclude the state met its burden in establishing that appellant knowingly, voluntarily and intelligently waived his Miranda rights. Appellant's will was not overborne by the level of alcohol in his system at the time of the pre-interview. The interviews were not excessive in length or intensity. The record also indicates appellant was not physically deprived or mistreated. Accordingly, appellant's statements during the pre-interview were the "product of a rational intellect and a free will".
 {¶ 52} Appellant's First Assignment of Error is overruled.
 II. {¶ 53} In his Second Assignment of Error, appellant argues that the trial court's imposition of consecutive sentences is unconstitutional pursuant to United States v. Booker
(2005),543 U.S. 220, 125 S.Ct. 738, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531. We agree.
 {¶ 54} Subsequent to the filing of briefs in the case at bar, the Ohio Supreme Court announced its decision in State v.Foster (Feb. 27, 2006), ___ Ohio St.3d ___, 2006-Ohio-856. InFoster the Court held, in relevant part: "[b]ecause R.C.2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional. (Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely v. Washington
(2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403, followed.)
 {¶ 55} "R.C. 2929.14(E) (4) and 2929.41(A) are capable of being severed. After the severance, judicial fact finding is not required before imposition of consecutive prison terms. (UnitedStates v. Booker (2005), 543 U.S. 220,125 S.Ct. 738,160 L.Ed.2d 621, followed.)." Id. at syllabus, paragraphs 3 and 4.
 {¶ 56} The Court in Foster, supra, provided the following instructions to the Courts: "These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order resentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protect Sixth Amendment principles as they have been articulated.
 {¶ 57} "Under R.C. 2929.19 as it stands without (B) (2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117, 134-136,101 S.Ct. 426, 66L.Ed.2d 328". Id. at ¶ 104-105.
 {¶ 58} Accordingly, this case is remanded to the trial court for re-sentencing in light of the remedial severance and interpretation of Ohio's felony sentencing statutes as set forth in the Foster decision.
 {¶ 59} Accordingly, the judgment of the Fairfield County Court of Common Pleas is affirmed in part and reversed and remanded in part.
Gwin, J., Wise, P.J., and Hoffman, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Fairfield County Court of Common Pleas is affirmed in part and reversed and remanded in part. Costs to appellant.