OPINION
{¶ 1} Appellant, Eric E. Stanberry, appeals from a decision of the Lake County Court of Common Pleas denying his motion to suppress evidence. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} At approximately 4:30 a.m. on July 2, 2001, deputies from the Lake County Sheriff's Department arrived at appellant's home in response to an emergency call for a possible overdose. When the officers arrived, rescue workers were attending to appellant. While preparing appellant for transport to the hospital, rescue workers questioned him regarding what he ingested. Appellant's answers were slow and labored, but ultimately appellant stated he consumed "a lot" of Valium. When asked where the pill bottle was, appellant was unresponsive. Appellant was transferred to the hospital and the officers stayed behind to question Michael Robinson, appellant's friend and the party who placed the emergency call.
 {¶ 3} According to Robinson, he and appellant had been drinking in the living room for several hours. Eventually, appellant brandished a bottle of pills, which Robinson believed to be Valium, and consumed them. Pursuant to their departmental policy, the officers attempted to determine if the overdose was intentional or accidental. To this end, the officers questioned Robinson about whether he believed appellant was attempting suicide. Robinson replied in the negative, but indicated he could not be sure. In interest of making a conclusive determination, the officers scanned the living room for a suicide note and/or a pill bottle.
 {¶ 4} At this time, the officers noticed several candles burning in the living room. The candles were melted to the extent that hot wax was dripping onto the floor. After extinguishing the candles, the officers commenced a thorough search of appellant's house. At the hearing, the officers indicated that the search was initiated to locate any additional unattended candles, to make sure no one else was in the residence, and determine whether appellant left a suicide note.
 {¶ 5} Their search took the officers upstairs, where they encountered two bedrooms. When the officers reached the second bedroom, they noticed the door was ajar with light shining forth from the crack. The officers opened the door and discovered a number of marijuana plants growing. After conducting this initial search, the officers secured a search warrant and seized the contraband.
 {¶ 6} At approximately 9 a.m. the same morning, appellant was being released from the hospital. A "plain clothes" detective from the sheriff's department met appellant at the hospital and asked him if he would accompany him to the station to talk about the items found during the execution of the search warrant. At the sheriff's department, the detective took appellant into a second floor office, read appellant hisMiranda warnings, and proceeded to question him. Although the officer claimed appellant appeared tired, it came to his attention that appellant had consumed nine Valiums, three hits of acid, and eight beers during the preceding evening.
 {¶ 7} Nevertheless, appellant executed a waiver of his Miranda
rights, the officer questioned him twice, and he made certain incriminating statements to the officer. During the first interview, appellant stated that all "the drug stuff" in the home belonged to him. Specifically, appellant indicated that he was growing several marijuana plants. He further disclosed that he had two dead marijuana plants that he might "grind up and make some `butter.'" Appellant stated he owned a "digital scale," some "pipes" and a bong. Appellant also asserted that he possessed a quantity of liquid LSD, cocaine, mushrooms, and a "couple of bags of weed." Moreover, appellant indicated that he sold marijuana to his close friends. During the second interview, occurring at approximately 1p.m. on the same date, appellant admitted that a bottle found in the home containing some 5,500 Valium belonged to him.
 {¶ 8} On October 22, 2001, appellant was indicted by the Lake County Grand Jury on the following counts: one count of possession of drugs, a felony of the second degree in violation of R.C. 2925.11; two counts of aggravated possession of drugs, one, a felony of the second degree and the other a felony of the fifth degree, both in violation of R.C. 2925.11; one count of possession of marijuana, a felony of the third degree in violation of R.C. 2925.11; one count of cultivation of marijuana, a felony of the third degree in violation of R.C. 2925.04; one count of possession of LSD, a felony of the fifth degree in violation of R.C. 2925.11; two counts of possession of cocaine, a felony of the fifth degree in violation of R.C. 2925.11; and one count of trafficking in cocaine, a felony of the fifth degree in violation of R.C. 2925.03(A)(2).
 {¶ 9} On December 3, 2001, appellant filed a motion to suppress the evidence discovered during the initial search and his statements at the sheriff's department. On December 14, 2001, a hearing was held after which the trial court denied the motion.
 {¶ 10} Appellant entered a plea of no contest on December 18, 2001 to one count of possession of drugs, one count of aggravated possession of drugs, and one count of possession of cocaine, and was found guilty by the trial court. Appellant was subsequently sentenced to an aggregate term of six years imprisonment. Appellant filed a timely notice of appeal and now assigns the following error for our consideration:
 {¶ 11} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress."
 {¶ 12} During a suppression hearing, the trial court functions as the trier or fact. Consequently, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of the witnesses. State v. Hrubik (June 30, 2000), 11th Dist. No. 99-A-0024, 2000 Ohio App. LEXIS 2999, at 4, citing State v.Mills (1992), 62 Ohio St.3d 357, 366. On review, the appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. Once the factual findings are accepted, the reviewing court must independently determine, as a matter of law, whether or not the applicable legal standard has been met. Hrubik, supra at 5, citing Retherford, supra at 592.
 {¶ 13} Appellant initially contends that the police conducted an unconstitutional search of his home and therefore the court erred in failing to suppress the fruits of the search. Specifically, appellant argues that although exigent circumstances were afoot, the officers' primary motive for their entry and subsequent search was seizing evidence of a criminal character. In our view, such a position is speculative and unsupported by the record.
 {¶ 14} A search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few well-delineated exceptions. Katz v. United States (1967), 389 U.S. 347, 357. The doctrine of exigency is an exception to the general, constitutional prohibition against warrantless searches. "Exigency" denotes the existence of "real immediate and serious consequences" that would certainly occur were a police officer to postpone action to get a warrant. Welsh v. Wisconsin
(1984), 466 U.S. 740, 751. As such, a court will not "excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." McDonald v. United States (1948), 335 U.S. 451, 456.
 {¶ 15} The United States Supreme Court has held that the doctrine of exigency applies in two separate sets of circumstances: first, police may commence a warrantless search and seizure to avoid "the imminent destruction of vital evidence." Wong Sun v. United States (1963),371 U.S. 471, 484. Second, a warrant is unnecessary where the police are faced with a "need to protect or preserve life or avoid serious injury."Mincey v. Arizona (1978), 437 U.S. 385, 392. The circumstances of the instant case fall within the purview of the latter category.
 {¶ 16} In Mincey, supra, the court stated:
 {¶ 17} "[w]e do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid." Id. at 392.
 {¶ 18} However, emergencies are inherently temporary and therefore the scope of a search justified by exigency is concomitantly limited. As such, when the officers in question have reasonable grounds upon which to believe that an emergency exists, they have a duty to enter the premises and investigate, provided that the warrantless search is "strictly circumscribed by the exigencies which justify its initiation." State v.Applegate (1994), 68 Ohio St.3d 348, 350, quoting Terry v. Ohio (1968),392 U.S. 1, 26.
 {¶ 19} In the current case, the police responded to a call from Michael Robinson, appellant's friend, indicating that appellant may have overdosed on some pills. Pursuant to the foregoing authority, the police were entitled, and, in fact, obligated to enter appellant's premises and investigate. However, the scope and duration of their intrusion and search must be evaluated in terms of the emergency. After appellant was transported to the hospital, the officers remained in appellant's home in interest of interviewing Robinson regarding the circumstances surrounding the purported overdose. The officer's asked Robinson whether he knew if appellant's overdose was either accidental or intentional. Robinson stated that he did not think appellant was intentionally committing suicide, but was not completely certain.
 {¶ 20} At the suppression hearing, one of the officers explained that the sheriff's department typically responds to overdose emergencies in order to determine whether the overdose was intentional or accidental. In the event of an intentional overdose, the sheriff's department would notify the hospital and, before releasing the patient, the hospital could conduct a psychiatric evaluation. To aid in this determination, departmental policy obligated an officer to perform a search for a suicide note and/or a pill bottle to assist the hospital in treating the victim.
 {¶ 21} Under the circumstances, the exigency which justified the officer's entry was appellant's alleged overdose. As suggested above, a search warrant was not required to legalize the officers' entry for the purpose of bringing emergency aid to appellant. However, in our view, the emergency was over once appellant was transported to the hospital. The record indicates there was no obvious emergency regarding the substance appellant consumed insofar as Robinson and appellant each identified the substance as Valium. Further, there is no "suicide note" exception to the Fourth Amendment. Any departmental policy enacted to assist the hospital in its psychological assessments or shield the department from civil liability cannot supercede the warrant requirements of the Fourth Amendment. "Overdose" is not a talisman that authorizes warrantless searches: some overdoses will involve emergencies that will justify a warrantless search, some plainly will not. The current case instantiates the latter: appellant was found in the living room whereupon he indicated he consumed "a lot" of Valium. Once appellant was transferred to the hospital, the emergency justifying the officer's warrantless entry (appellant's immediate aid) ceased. Therefore, the scope of the officer's permissible search under the exigency exception to the Fourth Amendment was limited to that which was in plain view in the room where they found appellant.
 {¶ 22} However, after appellant was transported to the hospital, the officers noticed numerous candles burning in the room where appellant was found. The candles had burnt down such that the hot wax was dripping onto the floor. It is worth noting that appellant resided in a duplex; consequently, the safety of two homes would be compromised in the event of a conflagration. So, observing the fire hazard, the officers extinguished the candles and proceeded to search the upstairs area of the home for more candles. The officers glanced into the first bedroom for candles and, ultimately, observed a light emanating from the next bedroom whose door was slightly ajar. A cursory perusal of the bedroom revealed a collection of marijuana plants growing in pots with illuminated "grow lights" and planting materials.
 {¶ 23} Generally, without a warrant or a recognized exception to the warrant requirement, police officers may not conduct a search of an individual's home. However, police officers may, without reasonable suspicion of criminal activity, intrude on a person's privacy to carry out "community caretaking functions" to enhance public safety. State v.Norman (1999), 136 Ohio App.3d 46, 54. The key to such permissible police action is the reasonableness required by the Fourth Amendment. Id. In our view, the police officers were acting reasonably when they performed their search of the home for burning candles. It was not unreasonable for the officers to conclude, after observing the severely melted candles downstairs, that other candles might be lit throughout the house. As such, it was incumbent upon the officers to make a reasonable investigation of appellant's home and extinguish any remaining candles. Of course, during this search the officers came upon appellant's marijuana plants. Although the plants were plainly visible from the doorway, the officers nevertheless secured a search warrant before seizing them. Therefore, the search and ultimate seizure under consideration did not run afoul of the Fourth Amendment's prohibition on unreasonable searches and seizures.
 {¶ 24} Next, appellant argues that he did not knowingly, intelligently, or voluntarily waive his Miranda rights and therefore the court was obligated to suppress his statements. The record reflects that appellant had ingested nine Valiums, three hits of acid, and eight beers. As a result, appellant was transported and admitted to the hospital for a purported drug overdose. Approximately five hours after his admission, a detective came to the hospital as appellant was being discharged. The officer queried whether appellant would accompany him to the station to discuss the previous night's episode. Appellant agreed. After arriving at the sheriff's department, the officer took appellant to a second floor office from which appellant could not freely exit. The officer read appellant his Miranda warnings and commenced an initial interview during which appellant made incriminating statements; later, during the same day, the officer further questioned appellant who made additional incriminating statements.
 {¶ 25} In Miranda v. Arizona (1966), 384 U.S. 436, the United States Supreme Court held that interrogation of a suspect in police custody entails certain procedural safeguards to protect a suspect's Fifth and Fourteenth Amendment privilege against self-incrimination. Id. at 444. Moreover, the custodial statements of a defendant may not be used against him in a subsequent criminal proceeding unless the prosecution can demonstrate that: (1) the defendant was given the Miranda warnings; and (2) thereafter made a knowing and intelligent waiver of his Fifth Amendment right against self-incrimination. Id. at 479.
 {¶ 26} Appellant does not dispute that he was provided with and waived his Miranda warnings prior to the initiation of the police questioning which resulted in his incriminating statement. Rather, appellant contends that the state failed to meet its burden of demonstrating that he knowingly and intelligently waived his Miranda
rights given the evidence that he was under the influence of various drugs and recovering from an ostensible overdose.
 {¶ 27} In order to determine whether a party knowingly and intelligently waived his Miranda rights, the inquiry is twofold:
 {¶ 28} "First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the `totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran v. Burbine (1986), 475 U.S. 412, 421.
 {¶ 29} In the current case, the record does not reveal any evidence of police intimidation, coercion, or deception. However, insofar as appellant had consumed an assorted cocktail of intoxicants a mere five hours before his encounter with the officer, we must carefully inspect the nuances surrounding the waiver. In particular, we must explore whether appellant was fully aware of the nature and extent of the rights he waived.
 {¶ 30} This court has previously held that "[t]he presence of [intoxicants] will not, by itself, make a statement per se inadmissible."State v. Stewart (1991), 75 Ohio App.3d 141, 147, quoting State v.Daniel (1990), 11th Dist. No. 89-T-4214, 1990 Ohio App. LEXIS 5877, at 26. In practice, this means that "`*** the presence of drugs or alcohol should be considered, [but] the amount must sufficiently impair the confessor's abilities to reason.'" State v. Stewart, 11th Dist No. 2001-P-0035, 2002 Ohio 7270, at ¶ 49, citing Stewart, supra, at 147. Therefore, a waiver is ineffective where a party's intoxication overrides his rational faculties.
 {¶ 31} In the current case, appellant was treated and released from the hospital after his purported overdose. When the officer arrived at the hospital, appellant was filling out paperwork to complete his release. The officer approached appellant who, according to the officer, "appeared maybe a little tired, but that was it, he was speaking coherently and answered all the nurse's questions." The officer further indicated that appellant did not seem disoriented or confused. As such, there was no ostensible evidence that appellant's intoxication overcame his rational faculties.
 {¶ 32} Although appellant underscores his level of intoxication, no evidence was presented as to the potency or effect of the drugs appellant ingested. Most importantly, no evidence was presented as to the possible individual or synergistic effects of the drugs on appellant's ability to reason or comprehend his surroundings. As such, in order to accept appellant's argument, we would have to assume facts not contained in the record, viz., that nine Valiums, three hits of acid, and eight beers, taken together, would sufficiently impair appellant's ability to reason and therefore vitiate the constitutionality of his Miranda waiver when said waiver was made at least five hours after appellant ingested his final intoxicant. We have neither the judicial wherewithal nor the clinical data to make such an inferential leap. Although the use of a statement based upon an unconstitutional waiver is antithetical to the notion of fundamental fairness embodied in the due process clause, we can glean no evidence from the record to suggest that appellant's impairment rises to such a level. Therefore, under the totality of the circumstances, we must sustain the admission of appellant's statement.
 {¶ 33} To summarize, the officers had an initial right to enter appellant's home and investigate the reported emergency pursuant to the exigency exception to the Fourth Amendment. Although the emergency was allayed when appellant was transported to the hospital, the officers were obligated, as community caretakers, to make certain no burning candles were left unattended in appellant's house. During their search for burning candles, the officer's noticed marijuana plants sitting in plain view in an upstairs bedroom. Once the marijuana plants were discovered, the officer's secured a search warrant and subsequently seized the contraband. Although a function of happenstance, the search of appellant's home and subsequent seizure of the drugs was procedurally sound. Therefore, the trial court did not err when it admitted evidence procured from the warrantless search of appellant's home.
 {¶ 34} Moreover, we are unable to conclude that appellant's intoxication sufficiently impaired his ability to reason so as to invalidate his Miranda waiver. Hence, the trial court appropriately overruled appellant's motion to suppress on this issue.
 {¶ 35} Consequently, the trial court's findings of fact are supported by competent, credible evidence and its order overruling appellant's motion to suppress is sustained. Thus, appellant's sole assignment of error is overruled and the decision of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., concurs.