OPINION
{¶ 1} Anthony Ecton pled no contest to aggravated vehicular assault and to failure to stop after an accident following a decision by the Montgomery County Court of Common Pleas overruling his motion to suppress evidence. The court found him guilty and sentenced him to two years of imprisonment for the aggravated vehicular assault and to six months in prison for the failure to stop charge. Ecton appeals from his conviction, arguing that the trial court erred in overruling his motion to suppress.
 {¶ 2} The state's evidence presented at the hearing on the motion to suppress revealed the following facts.
 {¶ 3} At approximately 10:30 p.m. on May 16, 2004, Ecton apparently hit a motorcycle while driving in downtown Dayton. Ecton fled the scene and stopped at the intersection of West Third Street and Broadway. At 10:37 p.m., Dayton Police Officer Jason Hall was dispatched to the scene of the accident. Around the same time, Dayton Police Officer Brian Updyke was dispatched to West Third Street and Broadway. Updyke was advised that a vehicle that had fled the scene of an accident from downtown was located there and that there were several individuals waiting for him to arrive.
 {¶ 4} Upon his arrival, Updyke encountered Ecton, who was sitting in the driver's seat of a vehicle with front-end damage. Updyke spoke with some guards from Moonlight Security who indicated that they had witnessed the driver hit a motorcycle in downtown and had followed the vehicle to this location from the accident site. Updyke identified himself to Ecton and told him that he needed Ecton to step out of car and to sit in the back seat of his cruiser. Updyke requested Ecton's identification and asked if he was injured. Ecton was very cooperative, provided his identification as requested, and stated that he was not injured. Updyke did not ask Ecton any further questions. Updyke contacted the dispatcher and indicated that he had the driver. Officer Hall was then dispatched to West Third Street and Broadway.
 {¶ 5} Hall spoke with the security guards and with Updyke and then removed Ecton from Updyke's cruiser. Hall explained the process of the field sobriety test to Ecton and asked him if he was willing to be tested. Ecton said that he was. They went to a level surface, and Hall began to explain the one-legged stand test. Ecton stated that he was too drunk and "let's just go to jail." Hall made a couple of attempts to make sure that Ecton did not want to try the test, and then he secured Ecton in the back of his cruiser. Ecton asked Hall if "the guy was okay" and stated that he "didn't mean to hit him."
 {¶ 6} Hall testified that Ecton seemed very intoxicated — he had strong odor of an alcoholic beverage, his speech was somewhat slurred, he looked disheveled, he had urinated on himself, "he had to basically climb out of the cruiser [and] needed a lot of support." Updyke also testified that Ecton appeared to be intoxicated. He stated that Ecton had a very severe odor of alcoholic beverage, was stumbling, had to lean up against the cruiser to maintain balance, and was unable to walk without assistance.
 {¶ 7} Hall took Ecton to the police department. At the Safety Building, Hall informed Ecton of his Miranda rights and read him all of the warnings on the back of the Ohio Administrative License Suspension (ALS) form, which is designed to inform individuals about Ohio's Implied Consent statute, R.C. 4511.191. Hall testified that Ecton appeared to understand his rights. Hall indicated that Ecton stated that he had had his rights read to him before and he acknowledged each of his rights when they were read to him. Ecton executed the form after he had been advised of his OVI rights and Miranda rights. Hall further indicated, however, that Ecton was slow to respond to questions, that some questions needed to be repeated, and that he abandoned questioning Ecton from the Dayton police department form for DUI arrests halfway through the questions. When he had answered questions, Ecton had answered appropriately.
 {¶ 8} At 12:22 a.m. on May 17, 2004, Dayton Police Officer Michael Blake administered a blood alcohol concentration (BAC) test. The test result was .239. After the test, Ecton was taken to the Montgomery County Jail. Later that day, Ecton made incriminating statements to Detective Mark Davis, who was conducting a follow-up investigation.
 {¶ 9} On August 11, 2004, Ecton was indicted for aggravated vehicular assault and failure to stop after an accident. On October 27, 2004, he filed a motion to suppress all tests of his sobriety, including coordination and chemical tests; all statements that he made; and all observations and opinions of the police officers regarding his sobriety. The court conducted a hearing on the motion on December 3, 2004; January 20, 2005; and February 22, 2005.
 {¶ 10} On October 6, 2005, the court denied the motion to suppress. The court concluded that the officers had probable cause to arrest Ecton, that the state substantially complied with all of the requirements for administering the BAC test and thus the breath test results were admissible, that Ecton's spontaneous statements prior to his arrest were not the product of custodial interrogation, that Ecton subsequently knowingly, intelligently, and voluntarily waived his Miranda rights, and that his statements to the officers were voluntary. The court specifically found that there was "no evidence that Ecton's level of intoxication at the time of his encounter with Hall interfered with his ability to understand his rights. The court further finds that Ecton understood the rights read to him relating to the breath testing and that he waived those rights in a knowing, intelligent and voluntary manner."
 {¶ 11} After the court denied his motion, Ecton pled no contest to the charges. He was sentenced accordingly. Ecton appeals, raising two assignments of error.
 {¶ 12} I. "THE TRIAL COURT'S FINDING THAT DEFENDANT KNOWINGLY AND INTELLIGENTLY CONSENTED TO TAKE A BREATH TEST WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} II. "THE TRIAL COURT FAILED TO PROPERLY APPLY ITS FINDINGS OF FACT TO THE LAW CONCERNING AN INDIVIDUAL'S RIGHT TO REFUSE TO TAKE THE BREATH TEST."
 {¶ 14} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. See State v. Morgan, Montgomery App. No. 18985, 2002-Ohio-268. "But the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.
 {¶ 15} Ecton argues that the trial court erred in concluding that he had knowingly and intelligently consented to the breath test, because the evidence indicated that he was too intoxicated to understand that he could refuse to take the test. Ecton further argues that "there is no requirement that the State administer the test" and that the state should not have administered the BAC test to him given his obvious level of intoxication. Ecton's arguments are without merit.
 {¶ 16} The collection of a blood, breath, or urine sample from an accused person in order to determine its alcohol content for the purpose of proving a criminal charge is a search and seizure within the meaning of the Fourth Amendment. Schmerber v.California (1966), 384 U.S. 757, 767, 86 S.Ct. 1826,16 L.Ed.2d 908. The state, however, may lawfully compel an individual suspected of driving under the influence to submit to a chemical test without a warrant. See id. at 770-771; Maumee v. Anistik,69 Ohio St.3d 339, 1994-Ohio-157, 632 N.E.2d 497.
 {¶ 17} Ohio's Implied Consent statute provides that a person operating a vehicle on a public roadway is "deemed to have given consent to a chemical test or tests" to determine the level of alcohol or drug in the person's blood, breath or urine if arrested for driving under the influence of alcohol and/or drugs. R.C. 4511.191(A).[1] A police officer may administer a chemical test after the arrested person is advised, in accordance with R.C. 4511.191(C), of the consequences of (1) refusing the test and (2) submitting to the test if he or she is found by the test to have a prohibited concentration of alcohol in the blood, breath, or urine. R.C. 4511.191(C). "R.C. 4511.191, however, does not command that a person suspected of driving while intoxicated be forced to submit to a chemical test. Rather, under Ohio law, a person may refuse to take a chemical test of his or her blood, breath or urine." Maumee, 69 Ohio St.3d at 341-42. Moreover, the state is under no obligation to administer a chemical test where the arrested driver is in a condition rendering him incapable of refusing the test. Hoban v. Rice (1971),25 Ohio St.2d 111, 267 N.E.2d 311, at paragraph five of the syllabus.
 {¶ 18} Upon request by the police officer, an arrested driver may voluntarily consent to a chemical test. See State v. King,
Hamilton App. No. C-10778, 2003-Ohio-1541, ¶ 22; Columbus v.Butler (June 3, 1986), Franklin App. No. 85AP-1034. Absent evidence that the defendant's reasoning was impaired by drugs or alcohol, intoxication will not render a defendant incapable of granting consent. See State v. Stewart (1991),75 Ohio App.3d 141, 147, 598 N.E.2d 1275 (intoxication or alcohol alone will not make the defendant's statement per se inadmissible); State v.Lewis (July 21, 1998), Franklin App. No. 97APA091-263 ("Absent any evidence that the appellant's reasoning was impaired by drugs or alcohol, intoxication of a defendant will not invalidate a confession.").
 {¶ 19} In the present case, there was substantial evidence that Ecton's physical skills were impaired due to intoxication. Both Hall and Updyke described Ecton as having a strong odor of an alcoholic beverage and that he was unable to maintain his balance and was stumbling. Hall further testified that Ecton's speech was somewhat slurred, that he looked disheveled, and that he had urinated on himself.
 {¶ 20} Despite the evidence that Ecton's physical skills were impaired, Ecton's statements to the officers reasonably suggested that his reasoning was not impaired to the point where he was incapable of knowingly and intelligently consenting to a chemical test. Hall and Updyke testified that Ecton had asked about the condition of the motorcyclist, that he had consented to taking a field sobriety test but indicated that he was physically unable to complete the test, and that he had stated that he should be taken to jail. Hall indicated that Ecton was read his Miranda
rights and the required warnings on the ALS form. Ecton appeared to understand his rights. Ecton stated to Hall that he had had his rights read to him before, and Ecton acknowledged each of his rights when they were read to him. Although Hall indicated that Ecton was slow to respond to questions and that he stopped asking questions from the Dayton Police Department DUI form without finishing it, Hall testified that Ecton had answered questions appropriately. Considering the totality of the circumstances, the trial court had sufficient competent credible evidence to support its determination that Ecton's ability to reason remained sufficiently unimpaired such that he could knowingly, intelligently, and voluntarily consent to the breath test.
 {¶ 21} Even if the trial court had erred in finding that Ecton could consent to the breath test, Ecton's motion to suppress the results of the breath test lacked merit. R.C.4511.191(B), which addresses a driver's implied consent when he is unable to refuse a chemical test, provides:
 {¶ 22} "Any person who is dead or unconscious, or who is otherwise in a condition rendering the person incapable of refusal, shall be deemed not to have withdrawn consent as provided by division (A) of this section and the test or tests may be administered, subject to sections 313.12 to 313.16 of the Revised Code."
 {¶ 23} R.C. 4511.191(B) "emphasizes and makes clear the main purpose of the implied-consent law that even under the conditions enumerated in subsection (B) the driver has consented to the sobriety test." Hoban, 25 Ohio St.2d at 119. A driver who is intoxicated to the point where he would be incapable of consenting to a chemical test would necessarily also be incapable of refusing one. As such, if Ecton had been as impaired as he suggests, the officers would have been able to deem that he had consented to the test, pursuant to R.C. 4511.191(B). In other words, just as an arrestee cannot claim to have been "too drunk to understand" his refusal as a defense to a license suspension, an arrestee cannot claim to have been too drunk to consent to a chemical test that he willingly took. See Hoban,25 Ohio St.2d at 118. Although the police officers would not have been required to administer a chemical test to Ecton in such circumstances, they were permitted to do so, and the record amply supports that the police complied with the statutory requirements in administering the test. Accordingly, the trial court did not err in overruling Ecton's motion to suppress the results of the breath test.
 {¶ 24} The assignments of error are overruled.
 {¶ 25} The judgment of the trial court will be affirmed.
Brogan, J. and Walters, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Because the events at issue occurred on May 16, 2004, the court employs the version of the Implied Consent statute in effect at that time.