OPINION
{¶ 1} Glenner Monticue appeals from his conviction and sentence following a no-contest plea to a charge of murder in violation of R.C. § 2903.02(A). *Page 2 
 {¶ 2} Monticue advances two assignments of error on appeal. First, he contends the trial court erred in overruling a motion to suppress incriminating statements he made following his arrest. Second, he claims the trial court erred in sustaining a motion in limine to preclude him from introducing evidence of his voluntary intoxication to negate the existence of specific intent to kill.
 {¶ 3} The facts underlying the present appeal are set forth in a suppression hearing transcript. In response to a call from a concerned citizen, two Miami County police officers discovered Monticue's mother dead inside her garage on January 16, 2006. The officers, Steven Lachy and Ben Fisher, also encountered Monticue inside his mother's home and placed him in custody. According to Lachy, Monticue appeared to be somewhat intoxicated.
 {¶ 4} For his part, officer Fisher recalled: "It appeared that he had been drinking, whether it be that day or heavily the night before. * * * He had bloodshot eyes, smelled of alcohol. He had, I believe, at some point in time had urinated on himself. There was — it looked like he had spit up on himself at one point in time, in those clothes." Fisher also detected slurred speech and noted that Monticue "had trouble finding words to say" and "was not walking very quickly," with "shuffling" or "staggering" movements. Monticue complained that his legs and feet were bothering him and that he was bleeding from the penis.
 {¶ 5} As a result of Monticue's physical complaints, detective Mark Slater accompanied him to the hospital. On the way, Slater advised Monticue of his Miranda rights and obtained a waiver. While speaking with Monticue, Slater could tell that he had been drinking. Slater noted that Monticue responded appropriately to questions, however, and did not appear to be "overly impaired." After arriving at the hospital, Slater listened while another officer confirmed Monticue's prior waiver of hisMiranda rights and interviewed him. During *Page 3 
that interview, Monticue responded consistently, "never stopped and went back and changed his story[,] * * * never really had to think about any questioning." A test at the hospital revealed that Monticue's blood-alcohol content was more than twice the legal limit to operate a vehicle. After approximately forty-five minutes, he was transported to the sheriffs office, where he again acknowledged the waiver of hisMiranda rights. Monticue then participated in an interview for up to two hours.
 {¶ 6} Following his indictment, Monticue moved to suppress all incriminating statements he had made to police on the day of his arrest. After an evidentiary hearing, the trial court sustained the motion with regard to a pre-Miranda statement Monticue had made in response to the question, "What's going on?" The trial court overruled the motion in all other respects. In so doing, the trial court made the following findings:
 {¶ 7} "The Court finds that the Defendant voluntarily, knowingly, and intelligently waived the Miranda rights prior to making statements in the patrol car, hospital, and at the interview room at the Sheriffs Department. The Court finds that all of the Defendant's statements were voluntarily made although he was under the influence of alcohol to a mild degree. The Court finds that minimal level of his impairment was not sufficient to undermine the validity of his statements. Additionally, the Court finds that the deputies did not deliberately exploit the fact that the Defendant was affected by alcohol to a minimal degree and did not coerce the Defendant in any way."
 {¶ 8} Thereafter, the State filed a motion in limine, seeking to prevent Monticue "from presenting evidence as to his alleged alcohol consumption and/or alleged intoxication[.]" After hearing argument, the trial court sustained the motion insofar as Monticue sought to introduce evidence of voluntary intoxication to negate the mental state required for a murder conviction. *Page 4 
The trial court overruled the motion, however, to the extent that Monticue sought to use evidence of his intoxication for other purposes. Monticue subsequently entered a no-contest plea to the murder charge. The trial court sentenced him to fifteen years to life in prison. This timely appeal followed.
 {¶ 9} In his first assignment of error, Monticue contends the trial court erred in failing to suppress all incriminating statements he made following his arrest. Monticue argues that he was too intoxicated to make a knowing and intelligent waiver of his Miranda rights. Therefore, he asserts that the waiver was invalid and that his statements were inadmissible. In support, he cites State v. Arrone, Greene App. No. 2005 CA 89, 2006-Ohio-4144, and State v. Stanberry, Lake App. No. 2002-L-028,2003-Ohio-5700.
 {¶ 10} Upon review, we find the foregoing argument to be unpersuasive. "In order for a waiver of the rights required by Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, to be valid, the State bears the burden of demonstrating a knowing, intelligent, voluntary waiver based upon the totality of the facts and circumstances surrounding the interrogation. What is essential is that the defendant have a full awareness of the nature of the constitutional rights being abandoned and the consequences of his decision to abandon them, and that the waiver not be the product of official coercion. An express written or oral waiver, while strong proof of the validity of that waiver, is neither necessary nor sufficient to establish waiver. The question is not one of form, but whether defendant in fact knowingly and voluntarily waived his rights." State v. Dotson, Clark App. No. 97-CA-0071 (citations omitted).
 {¶ 11} In the present case, the officers who testified at the suppression hearing agreed that Monticue appeared to have been drinking. They also noted that his movements were somewhat impaired. On the other hand, they testified that he was responsive to their *Page 5 
questions and cooperative. The officers further testified that Monticue indicated an understanding of his rights and agreed to waive them several times. One of the officers described Monticue's demeanor as "pretty talkative, very friendly, jovial, pretty light hearted." According to detective Slater, Monticue was "pretty consistent" and "never stopped and went back and changed his story[,] * * * [n]ever really asked anything to be repeated[,]" and "did not seem overly impaired[.]"
 {¶ 12} Although Monticue had been drinking, the record supports the trial court's conclusion that his reasoning ability was not so limited that he could not understand his rights or the consequences of waiving them. On the audiotape, Monticue engaged in coherent conversation with the officers and responded appropriately to their questions. He was aware of his circumstances and discussed what had transpired prior to his mother's death. Monticue assured the officers that he understood what was happening and that he was not intoxicated. He also admitted having kicked his mother in the head multiple times. On the videotape of his subsequent interview at the police station, he appeared to have full control of his reasoning abilities and did not give the impression that he was intoxicated. He answered the officers' questions consistently and in detail. He also recalled the course of events that led to his mother's death and admitted having stomped her head approximately eight times. Despite his relatively high blood-alcohol level earlier at the hospital, Monticue, who was a frequent and heavy drinker, gave little indication that he remained under the influence of alcohol. He acknowledged that he had been a little "tipsy" and had a "buzz" earlier in the day but denied being drunk during the interview. Cf. State v.Lewis (July 21, 1998), Franklin App. No. 97APA09-1263 ("Absent any evidence that the appellant's reasoning was impaired by drugs or alcohol, intoxication of a defendant will not invalidate a confession."); State v. Stewart *Page 6 
(1991), 75 Ohio App.3d 141, 147 (recognizing that alcohol consumption will not render a defendant's waiver of his Miranda rights invalid unless his ability to reason is sufficiently impaired); see alsoState v. Ecton, Montgomery App. No. 21388, 2006-Ohio-6069, ¶ 20
("Despite the evidence that Ecton's physical skills were impaired, Ecton's statements to the officers reasonably suggested that his reasoning was not impaired to the point where he was incapable of knowingly and intelligently consenting to a chemical test.").[1] Based on the totality of the circumstances, we are persuaded that Monticue had full awareness of the nature of the constitutional rights being abandoned and the consequences of his decision to abandon them, and that his waiver was not the product of official coercion.
 {¶ 13} Monticue's reliance on State v. Arrone, Greene App. No. 2005 CA 89, 2006-Ohio-4144, and State v. Stanberry, Lake App. No. 2002-L-028,2003-Ohio-5700, does not persuade us otherwise. In Arrone, we noted the trial court's finding that the defendant's level of intoxication rendered him incapable of waiving his Miranda rights. The issue before us on appeal, however, was not whether the Miranda waiver was valid. Instead, the issue was whether the appellant's spontaneous statements made before his attempted Miranda waiver were admissible.Arrone, supra, at ¶ 102-103. In any event, the fact that the defendant in Arrone may have been too intoxicated to waive his Miranda rights has no bearing on the validity of Monticue's waiver. *Page 7 
 {¶ 14} In Stanberry, the defendant ingested nine Valiums, three hits of acid, and eight beers approximately five hours before waiving hisMiranda rights and being questioned by police. Upon review, the Eleventh District found no evidence to suggest that the defendant's ability to reason was sufficiently impaired to invalidate his Miranda waiver. In reaching this conclusion, the Stanberry court noted an officer's testimony that the defendant spoke coherently, answered all questions, and did not seem disoriented or confused. Nothing in Stanberry
undermines our conclusion that Monticue likewise retained the ability to waive his Miranda rights despite his alcohol consumption. Monticue's first assignment of error is overruled.
 {¶ 15} In his second assignment of error, Monticue claims the trial court erred in sustaining the State's motion in limine to preclude him from using evidence of voluntary intoxication to negate the mental state required for a murder conviction. In support, he relies exclusively onState v. Opalach, Cuyahoga App. No. 85540, 2005-Ohio-5563, wherein the Eighth District stated that a defendant may use his voluntary intoxication to negate the element of specific intent.
 {¶ 16} Upon review, we find no merit in Monticue's argument. As an initial matter, a no-contest plea generally does not preserve for appeal a trial court's ruling on a motion in limine. State v. Lewis,164 Ohio App.3d 318, 321, 2005-Ohio-5921; State v. Engle, 74 Ohio St.3d 525, 529,1996-Ohio-179 (Resnick, J., concurring).Even setting that issue aside, the trial court's ruling plainly was correct. Revised Code § 2901.21(C) provides that "voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." Numerous courts have relied on R.C. § 2901.21 (C) to reject the argument that Monticue advances here. See, e.g., State v. Haney, Clermont App. *Page 8 
No. CA2005-07-068, 2006-Ohio-3899, ¶ 27; State v. Johnson, Mahoning App. No. 02 CA 206, 2004-Ohio-567, ¶ 12; State v. Melhado, Franklin App. No. 02AP-458, 2003-Ohio-4763, ¶ 48; State v. Robinson, Union App. No. 14-02-01, 2002-Ohio-2714, ¶ 45.
 {¶ 17} In light of R.C. § 2901.21(C), the trial court properly prevented Monticue from using evidence of voluntary intoxication to negate the mental state required for a murder conviction. Although the Eighth District found otherwise in Opalach, it cited case law predating the October 27, 2000 amendment to R.C. § 2901.21(C) that added the language quoted above. Opalach, supra, at ¶ 23. Therefore, we findOpalach to be unpersuasive authority. Monticue's second assignment of error is overruled.
 {¶ 18} The judgment of the Miami County Common Pleas Court is affirmed.
 . . . .
WOLFF, P.J., and GRADY, J., concur.
(Hon. George Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
[1] Notably, the defendant in Ecton had a blood-alcohol content level of .239 around the time of his waiver. Ecton, supra, at ¶ 8. He also "seemed very intoxicated," "had a strong odor of an alcoholic beverage," had "somewhat slurred" speech, "looked disheveled," had "urinated on himself," was "stumbling," and "was unable to walk without assistance." Id. at ¶ 6. Despite these facts, we concluded that "the trial court had sufficient competent credible evidence to support its determination that Ecton's ability to reason remained sufficiently unimpaired such that he could knowingly, intelligently, and voluntarily consent to the breath test." Id. at ¶ 20. *Page 1