[Cite as *State v. Woodward*, 2019-Ohio-908.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO 5-18-21

      v.

DUSTIN B. WOODWARD,              O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2017 CR 269

Judgment Affirmed

Date of Decision:   March 18, 2019

APPEARANCES:

    *William T. Cramer* for Appellant

    *Lora L. Manon* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Dustin B. Woodward ("Woodward"), brings this appeal from the September 25, 2018, judgment of the Hancock County Common Pleas Court sentencing Woodward to seven years in prison after he pled no contest to, and was convicted of, six counts of Pandering Sexually Oriented Material Involving a Minor in violation of R.C. 2907.322(A)(1), all felonies of the second degree. On appeal, Woodward argues that the trial court erred by denying his suppression motion.

*Relevant Facts and Procedural History*

{¶2} On or about August 14, 2017, the Forest Police Department learned of allegations that Woodward had taken explicit photographs of his six-year old stepdaughter. On the morning of August 14, 2017, at approximately 11 a.m., before the police had attempted to contact Woodward, Woodward went to the Forest Police Department due to the encouragement of his wife and his own "guilt." Outside of the station, Woodward met Chief Southward and indicated that he wanted to talk.[1] Woodward was taken inside where he was read his *Miranda* rights and he signed a written *Miranda* waiver. He was then interviewed by Chief Southward.

---

[1] Chief Southward testified at the suppression hearing that Woodward stated he wanted to "confess." Woodward disputed that issue, testifying that he had only gone to the police department because his wife told him that the police were looking for him.

{¶3} During the interview, Woodward stated that he had taken a total of ten to fifteen photographs of his stepdaughter's genitals over two or three separate occasions spanning a multi-week period. He stated that he had since deleted the photographs from his cell phone, but his wife found them in Google photographs, where he did not know they had still been saved. Woodward agreed to allow the police to search his phone.

{¶4} On August 22, 2017, Woodward was indicted for twelve counts of Gross Sexual Imposition ("GSI") in violation of R.C. 2907.05(A)(4), all felonies of the third degree, and twelve counts of Pandering Sexually Oriented Material Involving a Minor ("Pandering") in violation of R.C. 2907.322(A)(1), all felonies of the second degree. The bill of particulars alleged that the Gross Sexual Imposition charges stemmed from activity between April 1, 2017, and May 31, 2017, wherein Woodward engaged in sexual contact with his stepdaughter who was born in February of 2011. It was alleged that Woodward touched the victim's "pubic and vaginal region * * * for the purpose of sexually arousing or gratifying either himself or [the victim]." (Doc No. 79). The Pandering charges stemmed from Woodward taking photographs, which allegedly included the child's pubic, genital and/or vaginal area. (*Id.*) Woodward originally pled not guilty to the charges.[2]

---

[2] He also pled not guilty by reason of insanity and challenged his competence to stand trial but after a psychological evaluation, he was found competent.

{¶5} On October 31, 2017, Woodward filed a suppression motion seeking to suppress statements that he made to the police department. He argued that he was highly intoxicated and suffering from mental illness at the time he made his statement, rendering the *Miranda* waiver he signed invalid. In addition, Woodward argued that any information taken from his cell phone should be suppressed because the search exceeded the scope of his consent.

{¶6} On December 5, 2017, the State filed a response contending that Woodward was never actually in custody during his interview, that there were no indications that he was under the influence of drugs or alcohol, that his *Miranda* waiver was valid even if he was in custody, and that Woodward did not limit the scope of the search of his cell phone in any manner when he gave it to the police.

{¶7} The matter proceeded to a hearing on January 2, 2018. At the hearing the State presented the testimony of Chief Southward, and Detective Lyle Harvitt of the Hancock County Sheriff's Office. Detective Harvitt interacted with Woodward after he was interviewed by Chief Southward. The State also entered a copy of the signed, written *Miranda* waiver into evidence, and a DVD of the interview with Woodward. Woodward testified on his own behalf.

{¶8} On January 24, 2018, the trial court filed an entry denying Woodward's motion to suppress. The trial court determined that Woodward was not subject to a custodial interrogation as Woodward went to the police station willingly and

requested to meet with the Chief. Nevertheless, the trial court found that even if Woodward was subject to a custodial interrogation, he was advised of his *Miranda* rights and voluntarily signed a waiver.

{¶9} The trial court also found that Woodward displayed no observable signs of intoxication, that both officers testified that they did not smell alcohol on Woodward, and that Woodward did not appear intoxicated to them. In fact, the trial court noted that Woodward himself testified that despite his "buzz" he understood that he was not required to answer questions and he consented to a search of his phone. Thus the trial court determined there was no police coercion in this matter and there was no indication that Woodward's will was overborne. Finally, the trial court also determined that Woodward consented to the police searching his cell phone, and he did not limit this consent in any manner.

{¶10} After his suppression motion was denied, Woodward entered into a written, negotiated plea agreement wherein he agreed to plead no contest to six counts of Pandering as indicted. (Doc. No. 92). In exchange the State agreed to dismiss the remaining charges against him and to recommend that some of the prison terms be served concurrently with each other.

{¶11} The trial court held a Crim.R. 11 hearing and determined that Woodward's pleas were knowing, intelligent, and voluntary. The trial court then

found Woodward guilty of the six counts of Pandering that comprised the plea agreement, and the remaining counts against him were dismissed.

{¶12} On September 25, 2018, the matter proceeded to sentencing. The trial court imposed seven years in prison on each Pandering conviction, all to be served concurrently. A judgment entry memorializing Woodward's sentence was filed the same day. It is from this judgment that Woodward appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court violated appellant's due process rights and privilege against self-incrimination under the state and federal constitutions by finding his *Miranda* waiver to be voluntary.**

**Assignment of Error No. 2**
**The trial court violated appellant's due process rights and privilege against self-incrimination under the state and federal constitutions by refusing to suppress involuntary statements.**

{¶13} As the assignments of error are interrelated, we will address them together.

*First and Second Assignments of Error*

{¶14} In Woodward's first and second assignments of error, he argues that the trial court erred by finding his *Miranda* waiver to be voluntary. Specifically, Woodward argues that his intoxication and his history of mental health problems prevented him from knowingly waiving his rights. He also contends, in passing,

that the trial court erred by finding that he was not subject to a custodial interrogation.

Standard of Review

**{¶15}** A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.*; *see also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is *de novo*, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997); *State v. Yost*, 3d Dist. Seneca No. 13-18-03, 2018-Ohio-2873, ¶ 15.

Relevant Authority

**{¶16}** "A suspect in police custody 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if

he so desires.' " *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 6, quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nevertheless, it is well-established that Miranda warnings are not required in nonthreatening and nonconfining interrogation situations, which are noncustodial in nature. *State v. Carter*, 3d Dist. Allen No. 1-10-01, 2010-Ohio-5189, ¶ 21, citing *State v. Greeno,* 3d Dist. No. 13–02–46, 2003–Ohio–3687, ¶ 12, citing *State v. Mason*, 82 Ohio St.3d 144, 153, 694 N.E.2d 932 (1988). This is so because "[i]t is the coercive nature of custodial interrogation that necessitates the Miranda warnings[.]" *Greeno* at ¶ 12.

{¶17} In determining whether an interrogation is custodial, courts must inquire into " 'how a reasonable man in the suspect's position would have understood his situation.' " *Mason,* 82 Ohio St.3d at 154, 694 N.E.2d 932, quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The Supreme Court of Ohio has directed that, "[i]n judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.' " *State v. Gumm,* 73 Ohio St.3d 413, 429, 653 N.E.2d 253, 1995–Ohio–24, quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶18} If it is determined that an interrogation is custodial, determining whether a valid waiver of *Miranda* rights occurred also requires a consideration of the totality of the circumstances surrounding the interrogation as to whether statements were made knowingly and voluntarily, and whether defendant decided to forgo his rights to assistance of counsel and to remain silent. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *State v. Chester*, 10th Dist. Franklin No. 08AP-1, 2008-Ohio-6679, ¶ 22. Voluntariness factors to consider include: the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *State v. Twyford*, 94 Ohio St.3d 340, 360 (2002), citing *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus.

{¶19} Coercive police activity is a necessary predicate to finding that a suspect involuntarily waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Absent evidence that a suspect's will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct, a suspect's decision to waive his *Miranda* rights and confess will be deemed to be voluntary. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

**{¶20}** Notably, intoxication, unto itself, is insufficient to render a statement per se inadmissible. *State v. Cameron*, 11th Dist. Lake No. 2007-L-004, 2007-Ohio-6935, ¶ 19, citing *State v. Stanberry,* 11th Dist. No.2002-L-028, 2003-Ohio-5700, at ¶ 30; *State v. Fairley*, 3d Dist. Hancock No. 5-03-41, 2004-Ohio-2616, ¶ 21. Rather, the presence of drugs or alcohol should be considered, but the amount must sufficiently impair the confessor's abilities to reason. *State v. Stewart,* 11th Dist. Portage No.2001-P-0035, 2002-Ohio-7270, ¶ 49; *Fairley* at ¶ 21.

### Custodial Interrogation

**{¶21}** Evidence presented at the suppression hearing established that Woodward approached the Forest Police Department on his own accord, indicating he wanted to talk. He was led through a shared municipal building to a room where he could be interviewed. The door was not locked and Woodward was not placed under arrest. However, Woodward was still read his *Miranda* rights and he signed a written waiver, agreeing to speak with Chief Southward. The entire interview was recorded on Chief Southward's body camera.

**{¶22}** During the interview, Woodward provided short answers to Chief Southward's questions, but he did admit to taking ten to fifteen inappropriate photographs of his stepdaughter's genetalia. Woodward also stated that he came to the police department that morning because his wife pressured him and because of the guilt he was feeling.

{¶23} Based on the events that transpired, and the circumstances surrounding the interview, the trial court found that Woodward was "not subject to a custodial interrogation." (Doc. No. 45). The trial court reasoned that Woodward freely walked to the police station even though there was no warrant for his arrest. The trial court noted that while the door to the interview room was closed, it was in a loud, shared municipal building, and that the door was not locked. Woodward was also told initially he did not have to talk to the police. Thus the trial court found no custodial interrogation occurred.

{¶24} In reviewing the issue of whether there was a custodial interrogation on appeal, we agree with the trial court's analysis. Woodward appeared at the police station voluntarily. There is no indication of pressure by the police; rather, the pressure came from Woodward's wife and his conscience. Woodward was also not restrained and no threats were made to him. Although Woodward did not have a significant criminal history of interaction with the law, this factor alone does not outweigh the others indicating that the matter was not a custodial interrogation.

Voluntary <em>Miranda</em> Waiver

{¶25} Even assuming *arguendo* that Woodward's situation amounted to a custodial interrogation, the trial court *also* found that Woodward validly and voluntarily waived his right against self-incrimination. Woodward challenges the trial court's finding on this issue on appeal, claiming that his mental state was

impaired by his tequila consumption, his marijuana use, and his history of mental problems, specifically PTSD arising from his experiences with the Marines.

{¶26} More specifically, Woodford claims that before he spoke with the Chief at the police station he had consumed twenty ounces of tequila and smoked marijuana, despite it only being roughly 11 a.m. In fact, he actually contended that he was drinking tequila from a water bottle during the interview itself. Finally, Woodward argues that he was new to the criminal process and the Chief asked leading questions, further coercing his responses. Woodford contends that all these issues led to his statement being involuntary, rendering his *Miranda* waiver invalid.

{¶27} The State presented testimony disputing Woodward's claims. Chief Southward and Detective Harvitt, who both interacted with Woodward on the day of his interview, indicated that they did not smell any alcoholic beverages or marijuana on Woodward, and they both testified that Woodward did not appear intoxicated. Chief Southward was in a small room in relatively close proximity to Woodward, yet he noted neither signs of intoxication nor odors of an alcoholic beverage.[3] The video similarly reveals no clear signs of intoxication, though Woodward suggests otherwise in his brief.[4]

---

[3] At some points during the interview, Woodward can be seen taking sips from a plastic water bottle that he brought into the room with him. Although there was no indication the bottle contained anything but water, particularly given that it was a hot day in August (as Chief Southward testified), Woodward stated at the suppression hearing that the plastic bottle was actually filled with silver, 1800 tequila, but there is no indication that was true.

[4] Woodward contends that his movements were slow and his responses were brief; however, the conversation and subject matter were clearly uncomfortable for Woodward.

{¶28} The trial court determined that the testimony and evidence produced did not show that Woodward was intoxicated such that his ability to reason was sufficiently impaired. *See State v. Stewart,* 11th Dist. Portage No.2001-P-0035, 2002-Ohio-7270, ¶ 49; *Fairley*, *supra*, at ¶ 21. In our own review of the matter, giving deference to the trial court's factual findings, but reviewing the legal issues *de novo*, we agree with the trial court.

{¶29} The only evidence to support Woodward's claims are his own self-serving statements. As the trier-of-fact, the trial court was free to find these claims not to be credible, particularly given that the trial court saw and heard Woodward's testimony at the suppression hearing and reviewed his interview with Chief Southward. Moreover, two officers directly contradicted Woodward by testifying that he did not appear intoxicated and that they noted no indicators of impairment. Furthermore, although Woodward suggests otherwise, the body camera footage from the interview does not show any clear indication of intoxication.

{¶30} Finally, even if we assumed that Woodward was intoxicated to some degree, intoxication itself does not render a statement involuntary; rather, the intoxicants have to limit Woodward's ability to reason. *State v. Stewart,* 11th Dist. Portage No.2001-P-0035, 2002-Ohio-7270, ¶ 49; *Fairley*, *supra*, at ¶ 21. The interview itself showed Woodward recalling the events in question, though not the specific dates. He recalled roughly how many photographs he took, where he took

them, and that he took them on multiple occasions. He also specifically declined to provide a written statement because he was worried if he said something different in it than he had in his interview, his contradictions would be used against him. This further establishes his ability to reason at the time.

{¶31} Woodward may have regretted speaking with police after-the-fact, but there is simply no indication of police coercion in this case, and no indication that Woodward's statement was anything but voluntary.[5] Based on the record before us, we cannot find that the trial court erred in overruling Woodward's suppression motion. Therefore, Woodward's first and second assignments of error are overruled.

*Conclusion*

{¶32} For the foregoing reasons, Woodward's assignments of error are overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**

---

[5] It does not appear in his brief that Woodward renews his argument on appeal that the search of his cell phone exceeded the scope of his consent. However, even if he did argue it, we can find no error with the trial court's ruling on the matter.