[Cite as *In re Estate of Beverly*, 2013-Ohio-1498.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

IN THE MATTER OF:

    THE ESTATE OF
    GILMER J. BEVERLY,

[CHARLOTTE SAUBER, ET AL.,
APPELLANTS].

CASE NO. 13-12-28

O P I N I O N

IN THE MATTER OF:

    THE ESTATE OF
    GILMER J. BEVERLY,

[CHARLOTTE SAUBER, ET AL.,
APPELLANTS].

CASE NO. 13-12-29

O P I N I O N

Appeals from Seneca County Common Pleas Court
Probate Division
Trial Court Nos. 20121080 and 20121122

Judgments Affirmed

Date of Decision: April 15, 2013

APPEARANCES:

    *Kelton K. Smith* for Appellants

    *Timothy J. Hoover* for Appellee

**ROGERS, J.**

{¶1} Appellants, Andrea Stauffer and Charlotte Sauber (collectively, "Appellants"), appeal the judgment of the Seneca County Court of Common Pleas, Probate Division, naming Appellee, Paula Jackson, the administrator of the estate of Gilmer Beverly (the "Estate"). On appeal, Appellants argue that the trial court erred in admitting Jackson's testimony regarding certain hearsay statements made by Beverly before his death. For the reasons that follow, we affirm the trial court's judgment.

{¶2} Beverly died intestate on March 6, 2012 and was survived by four daughters, Appellants, Jackson, and Audrey Beverly ("Audrey"). Appellants applied to be joint fiduciaries of the Estate while Jackson applied to be the sole fiduciary. The trial court conducted a hearing on May 14, 2012 to resolve the Appellants' and Jackson's competing applications. The following relevant evidence was adduced at the hearing.

{¶3} First, Thomas Sullivan, a financial sales consultant with PNC Bank, testified regarding a banking power of attorney ("Banking POA") that was executed by Beverly on August 29, 2011. The Banking POA named Jackson as Beverly's agent for all of his bank accounts. Sullivan advised Beverly that he could dismiss Jackson whenever he wanted from her role as his Banking POA, but he never did so.

{¶4} Paula Jackson was then called to the stand for the first time by Appellants' counsel. She testified, as on cross-examination, regarding her activities as Beverly's Banking POA. She also stated that Beverly executed a health care power of attorney ("Health Care POA") that named her as his agent.

{¶5} Jackson indicated that she managed Beverly's financial affairs by writing out checks and ensuring that his bills were paid. Jackson also stated that she never signed the checks written on Beverly's accounts, but that she left that to her father. Further, she said that she kept her father informed as to the management of his financial affairs.

{¶6} Jackson testified that based on her handling of Beverly's financial affairs from August 2011 until his death, she believed that she was "better suited" to serve as the Estate's administrator and that her father trusted her. Tr., p. 18. To prove her knowledge of the Estate, Jackson testified as to the extent of Beverly's assets and his lack of debts. She also indicated that she was capable of handling her personal finances in a satisfactory manner and that she had a college degree in nursing.

{¶7} Jackson also testified that she did not use Beverly's funds for her personal purposes or for any other purposes besides those relating to her father. Further, she noted that she maintained exhaustive records of Beverly's financial transactions that occurred after February 2011. After providing this testimony,

Jackson authenticated a variety of these records, which were admitted into evidence. A review of these records reveals that many of the deductions from Beverly's accounts are accounted for with receipts. The records also reveal that after Beverly executed the Banking POA and Jackson started to handle his finances, his account balances increased until his death.

{¶8} Once Jackson stepped down, Audrey testified that she trusted Jackson to serve as the administrator of the Estate. Audrey also indicated that she had trusted Jackson to deposit a significant amount of her own money while she was in the process of buying a new house. On re-cross examination, Audrey stated that she would not have trusted Appellants in such a situation.

{¶9} Stauffer was then called to the stand by Appellants' counsel. She admitted that she was not bonded at the time of the hearing but also stated that she was in the process of obtaining a bond. Her counsel then elicited information regarding Beverly's trust of Jackson during his lifetime:

> Q: [W]hat had your father said to you about his trust of [Jackson] prior to his death * * *?
>
> A: He did not trust her.
>
> Q: As far as just trust in her?
>
> A: He was concerned that she was – there was money she wasn't accounting for. He was concerned. He was afraid of [Jackson]. Like I said there was some concern. It was brought to my attention that she was not handling his funds appropriately. Tr., p. 72.

{¶10} According to Stauffer's testimony, Beverly lived with her for approximately a year before he moved in with Jackson. Stauffer indicated that when Beverly moved out, he showed her his checkbook and that she remembered it showing a balance of approximately $98,000.00. However, after Beverly moved in with Jackson and she started to manage his affairs, Stauffer learned that Beverly's balance in his checking around was approximately $35,000.00. Stauffer also stated that Jackson had a new boat and jet skis, which led Beverly to "voice concern" regarding the funding for the purchases. Tr., p. 82.

{¶11} Sauber also testified and indicated that she did not trust Jackson to properly handle the Estate. Sauber said that Jackson had failed to consult Appellants in a variety of her father's dealings, including his admission to the nursing home before his death and the execution of the POAs in Jackson's favor. Appellants' counsel also elicited testimony from Sauber regarding Beverly's trust of Jackson:

> Q: And did you have discussions with your father prior to his death about whether he trusted [Jackson] to handle his affairs?
>
> A: Yes.
>
> Q: And what did your father say to you regarding whether or not he trusted Paula to handle his affairs?
>
> * * *
>
> A: He told me that – I asked him why he signed the power of attorney forms if he didn't trust her which he had told me he did not

trust her, that he felt if he gave her – he thought she was being greedy that she wanted it all, she didn't just want her share. So he gave her a little power hoping that she would back off because he was scared of her. Tr., p. 121-22.

{¶12} After Sauber's testimony concluded, Jackson returned to the stand. She testified that Beverly's financial records were not reconciled or properly accounted for when she started to handle his finances. Jackson also denied having a new boat. Instead, she explained that her husband owned an approximately 10-year old boat that was parked on her property. Jackson then testified regarding Beverly's trust of her as follows:

> Q: And again from your conversations with your father my memory is fading a little bit, but just to clarify what was his discussions with you about whom he trusted and why?
>
> * * *
>
> A: Like I had said before at one time I, you know, when the girls quit talking to me I was kind of hurt by that so I wanted to make sure this was what Dad wanted and I said Dad is there anybody else you would rather have do this? I mean I said do you want [Stauffer] or [Sauber] and you know, Audrey of course was living out of state so he wasn't considering her, but I said, he told me he didn't want [Stauffer] because he didn't trust her and [Sauber] he didn't think she knew what she was doing. That's what he told me, he said no, I want you to stay doing it, it was like I wanted to give him that option because they were making me feel like I tricked him into this and I didn't. Tr., p. 142-43.

Appellants' counsel objected to this line of questioning, but the trial court overruled it on the grounds that previous witnesses had testified to Beverly's trust of Jackson.

{¶13} On May 29, 2012, the trial court appointed Jackson the administrator of the Estate.

{¶14} Appellants filed this timely appeal from the trial court's judgment, presenting the following assignment of error for our review.

*Assignment of Error*

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING PAULA JACKSON TO TESTIFY TO A HEARSAY STATEMENT THAT WAS NOT OFFERED TO REBUT TESTIMONY BY AN ADVERSE PARTY ON A MATTER WITHIN THE KNOWLEDGE OF A DECEASED PERSON.**

{¶15} In their sole assignment of error, Appellants contend that the trial court committed reversible error in allowing Jackson to testify regarding Beverly's hearsay statements that he trusted her, and not Appellants, to handle his affairs. We disagree.

*Standard of Review*

{¶16} We only disturb a trial court's decision to admit evidence that is purportedly hearsay upon a showing of an abuse of discretion. *In re Estate of Clay*, 3d Dist. No. 10-98-12 (Feb. 3, 1999). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 16-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply

substitute its judgment for that of the trial court. *State v. Nagle*, 11th Dist. No. 99-L-089 (June 16, 2000), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Hearsay Rule*

**{¶17}** Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 802 generally prohibits the admission of hearsay unless the offered hearsay statement is covered by a specific exception. The parties' briefing directs us to two possible exceptions that may apply in this matter.

*Statement of a Deceased Person Exception*

**{¶18}** Appellants direct us to the statement of a deceased person exception provided in Evid.R. 804(B)(5). They argue that this is the only possible exception and that Jackson's testimony does not satisfy it. The exception provides, in pertinent part, as follows:

> (B)   * * * The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> * * *
>
> (5)   * * * The statement was made by a decedent * * *, where all of the following apply:
>
> (a)   the estate or personal representative of the decedent's estate * * * is a party;

(b)   the statement was made before the death * * *;

(c)   the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent * * *.

Evid.R. 804(B)(5) "permits a hearsay exception for the declarations of the decedent which rebut testimony offered by an adverse party and is only available to the party for the decedent." *Boley v. Kennedy*, 3d Dist. No. 3-02-35, 2003-Ohio-1663, ¶ 25. As a result, only the administrators and executors of an estate are able to utilize this hearsay exception. *Testa v. Roberts*, 44 Ohio App.3d 161, 167 (6th Dist.1988); *see also* (emphasis added.) *Bilikam, Huntington Natl. Bank of Columbus v. Bilikam*, 2 Ohio App.3d 300 (10th Dist.1982), paragraph four of the syllabus ("Evid.R. 804(B)(5) is an exception to the hearsay rule for the *benefit of a representative of a decedent * * *.*").

{¶19} Here, Jackson offered her testimony during the course of a hearing on the appointment of the Estate's administrator. Consequently, at the time of the hearing, Jackson was not the representative of the Estate and she could not offer her testimony as to Beverly's hearsay statements under the purview of Evid.R. 804(B)(5). As such, Jackson's testimony was not admissible under the statement of a deceased person exception.[1]

---

[1] We also note that neither Stauffer nor Sauber were the representative of the Estate at the time of the hearing. As such, their testimonies regarding Beverly's hearsay statements were also inadmissible under Evid.R. 804(B)(5).

*Statement of Then-Existing Mental, Emotional, or*
*Physical Condition Exception*

**{¶20}** Our finding that Jackson's testimony was inadmissible under Evid.R.

804(B)(5) does not end our inquiry. Jackson directs us to the statement of a then-

existing mental, emotional, or physical condition exception found in Evid.R.

803(3). It provides, in pertinent part, as follows:

> The following are not excluded by the hearsay rule, even though the
> declarant is available as a witness:
>
> * *
>
> (3) * * * A statement of the declarant's then existing state of mind,
> emotion, sensation, or physical condition (such as intent, plan,
> motive, design, mental feeling, pain and bodily health) * * *.
> Evid.R. 803(3).

Statements admitted under this exception "cannot include an explanation as to *why*

the declarant was of that particular [condition]." (Emphasis sic.) *State v. Stewart*,

75 Ohio App.3d 141, 152 (11th Dist.1991), citing *State v. Apanovitch*, 33 Ohio

St.3d 19, 21 (1987).

**{¶21}** Appellants' complaint is directed towards the following testimony by

Jackson:

> A:      Like I said before at one time I, you know, when the girls quit
> talking to me I was kind of hurt by that so I wanted to make sure this
> was what Dad wanted and I said Dad is there anybody else you
> would rather have do this? I mean I said do you want [Stauffer] or
> [Sauber] and you know, Audrey was of course living out of state so
> he wasn't considering her, but I said, he told me he didn't want
> [Stauffer] because he didn't trust her and [Sauber] he didn't think

she knew what she was doing. That's what he told me, he said no, I want you to stay doing it, it was like I wanted to give him that option because they were making me feel like I tricked him into this and I didn't. Tr., p. 142-43.

Beverly's hearsay statements contain two items of evidence regarding his then-existing state of mind before his death: (1) he trusted Jackson to handle his affairs; and (2) he trusted Jackson because he did not trust Stauffer and thought that Sauber could not handle the task.

**{¶22}** The first piece of evidence, which relates directly to Beverly's state of mind at the time of his statement, was admissible pursuant to Evid.R. 803(3). *See McGrew v. Popham*, 5th Dist. No. 05 CA 129, 2007-Ohio-428, ¶ 30 (finding that decedent's hearsay statement regarding her intent to transfer property was admissible under Evid.R. 803(3)). However, the second piece of evidence regarding the basis for Beverly's state of mind is not covered by Evid.R. 803(3) and thus should not have been admitted. *See id.* at ¶ 31 (finding that decedent's hearsay statement regarding the reason that she intended to transfer property was inadmissible under Evid.R. 803(3)).[2] Consequently, we find that the trial court erred in admitting testimony that included Beverly's hearsay statements regarding the basis for his trust of Jackson. However, it did not err in admitting Jackson's testimony that Beverly told her that he trusted her.

---

[2] The same analysis would apply to Appellants' testimonies regarding Beverly's hearsay statements as well. As such, Appellants' testimonies that Beverly said he did not trust Jackson would be admissible, but their testimonies that Beverly based his lack of trust on certain actions would be inadmissible.

*Prejudicial Effect of Jackson's Testimony*

**{¶23}** Even through the trial court erred in allowing Jackson to testify as to Beverly's hearsay statements regarding the basis for trusting her, we find that the error was invited and harmless. "The doctrine of invited error holds that a litigant may not 'take advantage of an error he himself invited or induced.'" *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. Appellants first elicited their testimonies regarding Beverly's hearsay statements that he did not trust Jackson because she was purportedly mishandling his affairs. This induced the trial court to allow Jackson to testify regarding similar hearsay evidence. Due to this invited error, we cannot find that the erroneous admission of Jackson's testimony is reversible. *See State v. Ray*, 3d Dist. No. 14-05-39, 2006-Ohio-5640, ¶ 43-44 (finding that invited error doctrine applied where the appellant was the first to elicit testimony regarding impermissible hearsay statements).

**{¶24}** Further, there is no indication that the testimony regarding Beverly's trust of Jackson swayed the trial court. The trial court's ruling does not indicate that it is based on Beverly's trust, or lack thereof, of Jackson before his death. Rather, the trial court's order refers to a myriad of other facts as the bases for its ruling, which are sufficient, without reference to trust, for the trial court's order.

{¶25} The trial court listed the reasons for its decision, including the following:

(1)  Beverly's execution of the Banking POA and Health Care POA in Jackson's favor;

(2)  Jackson's management of Beverly's financial affairs before his death, which left her familiar with the Estate's assets and debts;

(3)  Audrey's support for Jackson's application;

(4)  Jackson's competency to handle the Estate; and

(5)  The lack of evidence suggesting that Jackson had mishandled Beverly's financial affairs.

The trial court did not indicate that it based its ruling on evidence that Beverly trusted Jackson to handle his affairs.

{¶26} Indeed, the trial court explicitly downplayed evidence of Beverly's trust during the course of the hearing by stating, "I don't want to get into a lot of time with what Dad [Beverly] said and didn't say.  He's not here and it's really not that weighty for me in terms of hearing folks give self-serving testimony how much Daddy loved us."  Tr., p. 71.  As a result, the erroneous admission of the testimony was harmless.

{¶27} Accordingly, we overrule Appellants' sole assignment of error.

{¶28} Having found no error prejudicial to Appellants, in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**